Credit Bureau of Greater New York, Inc. v. Commissioner.Credit Bur. of Greater New York, Inc. v. CommissionerDocket No. 6163.United States Tax Court1946 Tax Ct. Memo LEXIS 76; 5 T.C.M. (CCH) 826; T.C.M. (RIA) 46229; September 25, 1946*76 1. Held, petitioner is not exempt from taxation as a business league. 2. Held, further, penalty for failure to file timely returns was properly imposed, where delay was not due to reasonable cause. Kenneth Carroad, Esq., for the petitioner. Ellyne E. Strickland, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income and declared value excess profits tax and delinquency penalties against*77 the Credit Bureau of Greater New York, Inc. for the years and in the amounts stated as follows: Deficiency in TaxDeficiency in PenaltyYearIncomeDeclared ValueIncomeDeclared ValueEndedTaxExcess Profits TaxTaxExcess Profits Tax3-31-32$112.70$103.373-31-33101.643-31-34$ 7.1859.56$ 24.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.3875.9433.243-31-367.19240.85314.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.9540.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.78 The petitioner claims a refund of all income and declared value excess profits taxes paid by it for the years in question. The issues are: (1) whether or not the petitioner is exempt from taxation as a business league under section 103 (7) of the Revenue Act of 1932 and sections 101 (7) of the Revenue Acts of 1934, 1936, and the Internal Revenue Code, and (2) if the answer to the first issue is in the negative, whether or not the petitioner is liable for delinquency penalties for failure to file timely returns for the years in question. Findings of Fact The petitioner is a corporation organized under the laws of New York, with principal office at New York, New York. The returns for the years in controversy*78 were filed with the collector of internal revenue for the third district of New York. The petitioner was originally incorporated under the name of Associated Retail Credit Men of New York City, Inc. In 1930 the name was changed to Credit Bureau of Greater New York, Inc., its present name. To prevent others from using the old name a new corporation was orgnized under the name of Associated Retail Credit Men of New York City, Inc. This is a dormant corporation and performs no corporate activities. The petitioner was organized for the following purposes, as stated in its constitution: ARTICLE II. Objects. Section 1. The objects of the Association shall be to promote, encourage and establish friendly intercourse and cooperation by the interchange of ideas and information among, and the rendering of mutual assistance to, representatives of individuals, copartnerships or corporations who transact business in whole or in part on a credit basis, or who are otherwise interested in the safe-guarding of credits. Section 2. To disseminate at frequent intervals literature containing accurate and reliable information on the subject of Retail Credits. Section 3. To do and perform any*79 other work and objects of a kindred nature incidental to, or based upon, the extension or safe-guarding of credits. The petitioner is a membership corporation. It has no stock or stockholders and pays no dividends to its members. The officers, who are rotated from among the membership, serve without compensation. The petitioner employs one permanent officer and executive director at a salary of $11,000 per year. In addition, it maintains a staff of about 175 employees. During the years here in question, the petitioner had about 1,000 members, including department stores, banks, clothing companies, jewelers, public utility companies publishers, hospitals, stock brokerage firms and professional men, such as doctors and dentists. An annual membership fee is charged to the members. This charge is either $25 or $15, depending on the type of membership. Of the $25 fee the petitioner allocates $10 for dues, $10 for contingent services (reports) and $5 for membership in a national trade association. The petitioner maintains credit information records on approximately 5,000,000 people. A card is kept for each person on whom a report is made. It also maintains a centralized record of*80 lawsuits and judgments against individuals and corporations. Its operations cover principally the metropolitan district of New York City. The petitioner also makes reports on individuals living in other parts of the country and in foreign countries who order from New York stores by mail or wish to use credit when they come to New York. In addition to securing such information, the petitioner engages in other activities in the credit field. It issues periodical bulletins to its members containing credit information, such as city, State and Federal legislation relating to credit matters, items from other publications relating to credit, and material disclosing fraudulent schemes and alleged impostors. The executive director of the petitioner gives lectures and speeches, the purpose of which is to encourage sound credit methods in business. The petitioner conducts monthly forums, open to the public, at which discussions concerning credit problems are encouraged. At one time the petitioner jointly, with a university in New York, sponsored a training course for future credit men. Aside from membership dues, the petitioner's only source of income arises from the issuance of credit reports. *81 The annual membership fee entitles a member to receive reports in an amount up to $10 without additional cost. This amount covers eight special reports at $1.25 each or 20 to 25 trade clearances. A charge is made to the members for reports in excess of this amount. The petitioner receives 45,000 to 50,000 inquiries from its members each month. The larger department stores require between 1,500 and 2,000 reports each month. It is not the petitioner's policy to realize a profit on the issuance of these reports and it attempts to furnish them at a figure which approximates its own cost as closely as possible. The petitioner furnishes reports to non-members at a price about 50 per cent in excess of that charged to its members. The business done with non-members is negligible. A large part of the information on file with respect to potential credit customers is furnished to the members on a confidential cooperative basis and would not be available to an ordinary commercial organization engaged in furnishing credit information for profit. In 1926 the petitioner caused to be organized a subsidiary corporation known as Associated Retail Credit Men's Adjustment Bureau, Inc., hereinafter*82 called the Adjustment Bureau. All the stock of the Adjustment Bureau is owned by the petitioner. The two corporations share the same offices, have the same officers and share the same telephone. The Adjustment Bureau has its own employees, six in number. The Adjustment Bureau was formed for the purpose of collecting accounts. The petitioner does no collection work and all inquiries concerning work of this nature are referred to the Adjustment Bureau. The following is taken from the minutes of the annual meeting of the petitioner held April 19, 1918: Mr. Cuddy, at the request of the Secretary, Mr. Thompson, had made inquiries as to whether or not Associations were liable to the Income Tax. Associations are not liable, but it is left to the discretion of the Commissioner to decide. He stated that the Commissioner had called upon him, and that it was necessary for him as the President, to make and file an affidavit, which he did. This had to be sworn to. Thereafter, and until 1937, the petitioner had no correspondence with any officers of the Bureau of Internal Revenue with respect to its tax liabilities. It was generally assumed by the officers and employees of the petitioner that*83 it was exempt from taxation and such a question was not raised. The general counsel of the petitioner expressed his opinion on one occasion that the petitioner was exempt from taxation. This opinion was apparently informal in nature. In 1937 the petitioner received a letter from the collector of internal revenue requesting information as to the petitioner's purposes and activities. This letter was answered on July 16, 1937. There was additional correspondence with the collector during that year. At some later time, the exact date of which is not disclosed by the record, the respondent ruled that the petitioner was liable for tax on its income. On February 24, 1943, the petitioner filed Federal income tax, excess profits tax and declared value excess profits tax returns for fiscal years ended March 31, 1930 to March 31, 1942, inclusive. The respondent determined that the delay in filing the returns for the years in question was not due to reasonable cause. Opinion VAN FOSSAN, Judge: The primary issue before us is whether or not the petitioner is exempt from tax as a business league under section 101 (7) of the Internal Revenue Code and corresponding sections*84 of applicable prior Revenue Acts. The provisions of the Code section are set forth in the margin. 1 We do not set out the provisions of the prior Acts since, for present purposes, they are identical with the Code. The Regulations (Regulations 103, section 19.101 (7)-1) provide in pertinent part as follows: A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization*85 whose purpose is to engage in a regular business of a kind ordinarily carried on for profit even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. * * * These regulations, which have remained unchanged throughout repeated reenactments of the statute, must be deemed to have the force and effect of law. Apartment Operators Ass'n. v. Commissioner, 136 Fed. (2d) 435; Retailers Credit Ass'n. of Alameda County v. Commissioner, 90 Fed. (2d) 47. It is our opinion that the petitioner does not meet the tests laid down by the statute and regulations. The latter provide that to be exempt under section 101 (7) a corporation must not be one whose purpose is to engage in a regular business of a kind ordinarily carried on for profit. Here, however, the petitioner's principal business was the furnishing of credit information to its members. Reports up to $10 were included in the annual membership fee but this constituted a negligible portion of the services required each month by the petitioner's members, especially the larger department stores. A charge was made for all reports*86 furnished in excess of this amount. That such activities constitute the engaging in "a regular business of a kind ordinarily carried on for profit" was decided in Apartment Operators Ass'n. v. Commissioner, supra; Retailers Credit Ass'n. of Alameda County v. Commissioner, supra; and Credit Managers Ass'n. of Northern & Central California v. Commissioner, 148 Fed. (2d) 41. The petitioner seeks to distinguish these cases upon the ground that in all of them the taxpayer carried on a collection business in conjunction with its other activities, whereas here the petitioner did no collection work. It must not be overlooked, however, that although the petitioner itself did no collection work, it maintained a wholly owned subsidiary which shared the same offices and telephone as the petitioner and which had the same officers, which was organized for, and exclusively engaged in, the collection of accounts. Moreover, it is not apparent from an examination of the cases cited above that the decisions would have been otherwise had the corporations involved done no collecting. Thus, in Credit Managers Ass'n of Northern & Central California v. Commissioner, supra,*87 the Circuit Court of Appeals, after describing the activities of the taxpayer in furnishing credit information, stated that "The Tax Court found that petitioner had two other sources of revenue, also from activities of a kind ordinarily engaged in for profit." (Italics added.) The petitioner correctly points out that where the activities of the corporation are directed to the improvement of business conditions or the promotion of general objects of one or more lines of business, the incidental engaging in activities ordinarily carried on for commercial purposes is not sufficient to destroy the exemption. See Commissioner v. Chicago Graphic Arts Federation, Inc., 128 Fed. (2d) 424. It contends that its primary purpose is the promotion and encouragement of better credit practices in the community. The facts, however, we think show otherwise. The lectures given by the petitioner's executive director, the training school, and the public forums conducted by the petitioner were all incidental to its main purpose, which was the distribution of credit information to its members. We hold, therefore, that the petitioner was engaged in a regular business of a kind ordinarily*88 carried on for profit and in the performance of services for individual persons and that it is not entitled to exemption under section 101 (7). There remains the question of whether or not the respondent properly imposed 25 per cent penalties for failure to file timely returns. In this too, we think his action must be sustained. The principal evidence offered on behalf of the petitioner is an exhibit from the minutes of the annual meeting held April 19, 1918, which contains a recital that the president of the petitioner had filed an affidavit with the Commissioner. Neither the affidavit itself nor any evidence of its contents were introduced into evidence. The facts show that thereafter the question was not raised and that the officers and employees of the petitioner assumed it to be exempt from taxation. In West Side Tennis Club v. Commissioner, 111 Fed. (2d) 6, it was held that the mere assumption by the officers and board of directors that the corporation was tax exempt was insufficient to prevent the imposition of the penalty where the steps taken by the taxpayer to ascertain its status and the basis for the belief of the officers and directors that it was exempt*89 were not shown. We do not believe that the portion of the minutes of the annual meeting, without more, is of sufficient weight to remove the instant case from the rule of the West Side Tennis Club case. The petitioner further contends that it had reasonable cause for failure to file timely returns because its general counsel was of the opinion that it was exempt from tax. It relies on The C. R. Lindback Foundation, 4 T.C. 652, where we held that advice of reputable counsel that a taxpayer is not liable for tax, accompanied by other circumstances showing the taxpayer's good faith, constituted reasonable cause for failure to file on time. Here again, however, the evidence in the record is incomplete and unsatisfactory. There is no showing that the opinion of the petitioner's general counsel was anything more than an informal and subjective opinion. Such a subjective opinion, whether or not well founded, does not constitute reasonable cause which will avoid the imposition of the penalty. Fides, A.G., v. Commissioner, 137 Fed. (2d) 731. Decision will be entered for the respondent. Footnotes1. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this chapter - * * *(7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual;↩